UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


LADON MAURICE GREEN,

                    Petitioner,

v.                                    Case No. 3:07-cv-66-J-33TEM

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____


**ORDER**

**I. Status**

       Petitioner Ladon Maurice Green, an inmate of the Florida penal
system who is proceeding *pro se*, initiated this action by filing a
Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition)
and a Memorandum of Law in Support of the Petition (Doc. #2)
pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2000 state
court (Duval County, Florida) judgment of conviction for burglary
of a structure on the following grounds: (1) ineffective assistance
of trial counsel for failure to suppress statements obtained in
violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); (2)
ineffective assistance of trial counsel for failure to conduct an

_____

       [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

adequate pretrial investigation; (3) ineffective assistance of trial counsel for failure to call witnesses (Ryan Noble and Officer K.P. Welch) whose testimony would have supported Petitioner's defense theory; (4) Petitioner was denied due process of law when the prosecutor engaged in prosecutorial misconduct by improperly dismissing a defense witness without Petitioner's consent; (5) Petitioner was denied due process of law when the State failed to disclose photographic evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); (6) Petitioner was denied due process of law when the prosecutor argued, during closing argument, that the Petitioner "kicked" out the window of the patrol car; and (7) Petitioner was denied due process of law when a jury instruction was given that amounted to an impermissible comment on the evidence.

Respondents have responded to the Petition. <u>See</u> Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #8) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner was given admonitions and a time frame to respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has responded. <u>See</u> Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #15); Petitioner's Exhibit List (Doc. #16). This case is now ripe for review.

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

## II. Procedural History

On March 9, 2000, Petitioner was charged with burglary of a structure or conveyance, as follows:

> HARRY L. SHORSTEIN, State Attorney for the Fourth Judicial Circuit of the State of Florida, in and for Duval County, charges that LADON MAURICE GREEN on or between the 17th day of November, 1999 and the 18th day of November, 1999, in the County of Duval and the State of Florida, did unlawfully enter or remain in a structure, to-wit: a storage container, the property of Radio Shack, with the intent to commit an offense therein, to-wit: Theft, contrary to the provisions of Section 810.02(4), Florida Statutes.

Ex. A at 24, Amended Information.  He was also charged with escape; however, this count was dismissed.  <u>Id</u>. at 32.  After a jury trial (Ex. C, Ex. D and Ex. E, Transcript of the Jury Trial (hereinafter Tr.)), he was found guilty of burglary of a structure.  Tr. at 387; Ex. A at 50, Verdict.  Petitioner, as a habitual felony offender, was sentenced to nine and one-half years.  Ex. A at 93-102.

Petitioner, through counsel, appealed and raised the following claims: (1) the State engaged in prosecutorial misconduct during arguments when referring repeatedly to facts not in evidence, and the trial court erred in overruling the Defendant's objections to those arguments and in denying the motion for mistrial; (2) the giving of the standard jury instruction on possession of property recently stolen was an impermissible comment by the court on the evidence; and (3) the trial court committed fundamental error in instructing the jury that possession of property recently stolen by

3

means of a burglary gives rise to an inference that the person in unexplained possession committed a burglary. Ex. F, Amended Initial Brief. The State filed an Answer Brief, and Petitioner filed a Reply Brief. Ex. G; Ex. H. On January 28, 2002, the appellate court per curiam affirmed without issuing a written opinion. <u>Green v. State</u>, 804 So.2d 1282 (Fla. 1st DCA 2002); Ex. I. The mandate was issued on February 13, 2002. Ex. I.

On or about August 20, 2002, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850. Ex. J at 1-32. Thereafter, he filed a *pro se* amended motion for post conviction relief on March 6, 2003 (<u>id</u>. at 88-138), a *pro se* amended motion for post conviction relief on or about September 29, 2003 (<u>id</u>. at 33-87), and a *pro se* Newly Discovered Evidence Motion to Amend on July 22, 2004. <u>Id</u>. at 139-42. An evidentiary hearing was conducted on June 18, 2004, and arguments were held on June 28, 2004. Ex. K at 289-354, Transcript of the June 18, 2004, Evidentiary Hearing (hereinafter EH Tr.); Ex. K at 378-98, Transcript of the June 28, 2004, Hearing. On March 24, 2005, the trial court denied the motions for post conviction relief. Ex. J at 146-63.

On appeal, Petitioner filed a *pro se* Initial Brief. Ex. O. The State filed an Answer Brief, and Petitioner filed a *pro se* Reply Brief. Ex. P; Ex. Q. On May 30, 2006, the appellate court per curiam affirmed without issuing a written opinion. <u>Green v.</u>

4

State, 933 So.2d 525 (Fla. 1st DCA 2006); Ex. S.  Petitioner filed

a motion for rehearing (Ex. R), which was denied.  Response at 3.

The mandate was issued on July 26, 2006.  Ex. S.

The Petition is timely filed within the one-year period of

limitation.  See 28 U.S.C. § 2244(d); Response at 3 n.5.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a

federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if

true, would entitle the applicant to federal habeas relief."

Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation

omitted).  "It follows that if the record refutes the applicant's

factual allegations or otherwise precludes habeas relief, a

district court is not required to hold an evidentiary hearing."

Id.

This Court has carefully reviewed the record and concludes

Petitioner is not entitled to an evidentiary hearing.  The

pertinent facts of the case are fully developed in the record

before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th

Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's]

claim[s] without further factual development."  Turner v. Crosby,

339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034

(2004).  Therefore, an evidentiary hearing will not be conducted by

this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303.  The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.  See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).  Thus, to the

7

extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.   Id.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007).  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of

8

ineffective assistance of counsel are few and far between.'"  Van
Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir.
2002) (per curiam) (citations and footnote omitted), cert. denied,
537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain
> principles and presumptions to guide our
> review of ineffectiveness claims under the
> flexible, case-specific standards of
> Strickland.  We engage only in a "highly
> deferential" review of counsel's performance
> and "indulge a strong presumption that
> counsel's conduct falls within the wide range
> of reasonable professional assistance; that
> is, the defendant must overcome the
> presumption that, under the circumstances, the
> challenged action might be considered sound
> trial strategy." Strickland, 466 U.S. at 689,
> 104 S.Ct. at 2065 (quotation omitted).  As a
> result of this presumption, a petitioner must
> show "that no competent counsel would have
> taken the action that his counsel did take."
> Chandler v. United States, 218 F.3d 1305, 1315
> (11th Cir. 2000) (en banc).  Thus, "where the
> record is incomplete or unclear about
> [counsel]'s actions, we will presume that he
> did what he should have done, and that he
> exercised reasonable professional judgment."
> Id. at 1314 n. 15 (quoting Williams v. Head,
> 185 F.3d 1223, 1228 (11th Cir. 1999)).
> Moreover, because the standard is an objective
> one, trial counsel's admission that his
> performance was deficient "matters little."
> Id. at 1315 n.16.  We must also avoid "the
> distorting effects of hindsight" and evaluate
> the reasonableness of counsel's performance
> from the perspective of counsel at the time
> the acts or omissions were made.  Strickland,
> 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

9

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that counsel was ineffective for failure to suppress statements obtained in violation of <u>Miranda</u>, 384 U.S. 436. As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (as ground two). In denying this ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's second ground for relief, he alleges that counsel rendered ineffective assistance by failing to file a Motion to Suppress the alleged out-of-court confession. The Defendant argues that his previous counsel had assured him that there were valid grounds to suppress his alleged confession. The Defendant further states that trial counsel, Gregory Messore, erroneously informed him that no basis existed to challenge the confession. The Defendant testified at the evidentiary hearing held on June 18, 2004, regarding this allegation. The Defendant testified that his prior counsel, Richard Selinger, had told him that there might be grounds to suppress his statement. (Exhibit "D," pages 9-10.) The Defendant testified that Mr. Messore never discussed the possibility of filing a Motion to Suppress with him. (Exhibit "D," page 18.) On cross-examination, the Defendant testified that he voluntarily gave his statement to Detective Reed because he wanted Detective Reed to know that he was innocent. (Exhibit "D," pages 30-31.)

> The Defendant's trial counsel, Gregory Messore, testified at the evidentiary hearing concerning ground two. Mr. Messore testified that he did not know of any grounds that could

10

have been used to suppress the Defendant's statements. (Exhibit "D" pages 44-45.) Mr. Messore testified that he knew that Mr. Selinger had told the Defendant there were some valid grounds, but that he was not aware of any meritorious, legal grounds to support a Motion to Suppress. (Exhibit "D," page 45.) Mr. Messore testified that the Defendant's statement was exculpatory and supported the defense's theory that the Defendant was acting as a good Samaritan. (Exhibit "D," page 45.) Finally, Mr. Messore testified that he did not know of any available or colorable argument that the Defendant's statement could have been suppressed because it was not done in writing or had not been properly recorded.[4] (Exhibit "D," page 45.) On cross-examination, Mr. Messore reiterated that after reviewing the record he did not see any valid grounds to suppress the Defendant's statements. (Exhibit "D," page 62.)

This Court specifically finds Mr. Messore's testimony was both more credible and more persuasive than the Defendant's testimony and allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). The Court finds that there are no grounds on which the Defendant's statements could have been suppressed. Therefore, there was no deficiency in defense counsel's failing to move to suppress the Defendant's statements. Strickland. Defense counsel discussed with the Defendant that there was no colorable argument that could be made to suppress those statements and further explained that the Defendant's statements were exculpatory in nature and consistent with their trial strategy. Accordingly[,] the instant ground is without merit.

Ex. J at 150-51.

---

[4] Officer Reed testified that he asked Petitioner to provide a written statement; however, Petitioner "didn't wish to write a statement because he was experiencing pain in both shoulders." Tr. at 255, 257-58.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.  After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner.  Ex. J at 151.  The Court notes that credibility determinations are questions of fact.  See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).  Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Given the trial

court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

Further, in evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.   The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's performance was not deficient.

At the trial, Officer Reed (the interrogating officer) testified that, prior to interviewing Petitioner, he read Petitioner his constitutional rights from a preprinted form that is provided by the Jacksonville Sheriff's Office.  Tr. at 243.  He further stated that Petitioner fully understood those constitutional rights.   <u>Id</u>. at 244.   He explained the constitutional rights that were on the preprinted form, of which Petitioner was notified:

> It indicates that he has a right to remain
> silent.  Anything he say[s] can be used

> against him.  He have [sic] a right for an
> attorney.  He can stop talking to me anytime
> he wish.

Id. at 246.  Petitioner states that his prior defense counsel had

informed him that a viable suppression motion could be predicated

on the fact that the Miranda form failed to advise Petitioner of

his right to have counsel present during the questioning.  Petition

at 6A.  However, as previously noted, Officer Reed testified that

the preprinted rights form read to Petitioner contained a warning

that he had the right to an attorney and could stop talking to the

interviewing officer at any time.  Tr. at 246.  Petitioner was

sufficiently informed of his constitutional rights.

Petitioner voluntarily gave his statement to Officer Reed

because he wanted Officer Reed to know that he was innocent. EH Tr.

at 317-18.  Further, as noted by defense counsel at the evidentiary

hearing (id. at 332), Petitioner's "statement only helped him."

Therefore, since his statement was helpful to his defense, counsel

was not interested in its suppression.  At trial, Officer Reed

described Petitioner's oral statement:

> He stated that earlier -- actually, the
> day prior, he parked his vehicle at Radio
> Shack.  His brother actually had taken him
> there.  And he said on 11/18/99, at
> approximately three o'clock in the morning, he
> returned to the burglary scene.
>
> He said when he returned to the burglary
> scene he observed two white males at the scene
> and those white males left in a Penske truck.

14

> At that time the defendant advised that
> he saw some boxes on the ground next to a
> storage container.  He said he placed the
> empty storage boxes inside -- excuse me --
> yeah, he placed the empty storage box inside
> the storage container and he placed the boxes
> containing property inside his van.

Tr. at 248-49.

On cross-examination, defense counsel further inquired about Petitioner's statement.  Officer Reed confirmed that Petitioner, during the interview, adamantly and consistently denied that he had committed the burglary.  Id. at 254.  Further, Officer Reed affirmed that Petitioner, during the interview, had stated he was taking the boxes that had merchandise in them to his residence because his roommate, Ryan Noble, was an employee of that Radio Shack.  Id. at 255.  And, in closing argument, defense counsel again referenced Petitioner's statement to Officer Reed, argued that Petitioner was not guilty of the crime of burglary and referred to Petitioner's mere attempt to perform a "good deed." Id. at 362, 365, 367.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

15

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective for failure to conduct an adequate pretrial investigation. As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (as ground three). In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's third ground for relief, he alleges counsel rendered ineffective assistance by failing to engage in a pretrial investigation. Specifically, the Defendant contends that counsel should have investigated how exactly the storage container doors were damaged on the storage container, examined the photographs taken by the police and presented evidence at trial to show that the Defendant did not have any means to open the lock. The Defendant testified at the evidentiary hearing concerning this allegation. The Defendant testified that the main thing he wanted counsel to investigate was the photographs of the container doors because the State said the [sic] he had broken in with a crowbar. (Exhibit "D," page 21.) The Defendant testified that the first time he saw any photographs was the day of trial. (Exhibit "D," page 22.) The Defendant testified that he did not personally see an evidence technician taking photographs of his truck or of the storage container. (Exhibit "D," page 22.) The Defendant testified that he saw the photographs introduce[d] into evidence and that those photographs did not show any damage to his truck. (Exhibit "D," page 23.) The Defendant testified that he wanted a photograph of the point of entry, which he was told did not exist. (Exhibit "D," page 23.) On cross-examination, the Defendant testified that he recalled discussing with counsel and the Court during his trial about offering photographs at trial. (Exhibit "D," page 32.)

16

The Defendant testified that he never told the Court that he did not want counsel to offer any photographs other than what the State was already going to offer. (Exhibit "D," page 32.) The Defendant testified that some but not all of the photographs taken by the evidence technician were admitted into evidence at trial. (Exhibit "D," pages 32-33.) The Defendant testified that he remembered counsel mentioning the crowbar during closing argument but in his opinion counsel did not properly argue it to the jury. (Exhibit "D," page 34.)

Mr. Messore testified at the evidentiary hearing regarding this allegation. Mr. Messore testified that he met with the prosecuting Assistant State Attorney and discussed the crime scene and availability of photographs. (Exhibit "D," page 46.) Mr. Messore testified that he personally drove to the crime scene, that it was different from the way it was at the time of the crime and was not helpful to his preparations. (Exhibit "D," page 46.) Mr. Messore testified that he viewed the photographs taken by the Jacksonville Sheriff's Department. (Exhibit "D," pages 46-47.) Mr. Messore testified that the State did not admit all of the photographs into evidence. (Exhibit "D,"page 47.) Mr. Messore testified that the Defendant initially wanted better photographs depicting the point of entry to be admitted but after discussing the issue agreed the Defendant [sic] that additional photographs would not be admitted into evidence. (Exhibit "D," page 47.) Mr. Messore testified that by admitting even one photograph, the defense would have forfeited the opportunity to have a second closing argument. (Exhibit "D," pages 47-48.) On cross-examination, Mr. Messore testified that none of the photographs admitted at trial clearly captured the damage to the storage container (Exhibit "D," page 58.) Mr. Messore testified that although the Defendant initially wanted additional photographs admitted into evidence, he ultimately agreed to not admitting any additional photographs. (Exhibit "D," page 59.)

17

Additionally, this Court notes that at the close of the State's case, the Court had an in depth conversation with the Defendant regarding his rights to testify and present witnesses and evidence. (Exhibit "C," pages 276-307.) During this conversation, there were extensive discussions regarding the photographs admitted into evidence as well as the possibility that additional Polaroid photographs of the crime scene existed that had not been disclosed to the defense, to which the Court inquired [of] the State, defense counsel and witnesses that had previously testified during the trial. (Exhibit "C," pages 285-307.) At the conclusion of this conversation, the Defendant agreed with the decision to preserve the defense's rebuttal closing argument and stated that the Court did not need to do any additional inquiry into the possible existence of additional Polaroid photographs. (Exhibit "C," pages 306-307.)

The Court specifically finds Mr. Messore's testimony was both more credible and more persuasive than the Defendant's testimony and allegations. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). Further, the Jacksonville Sheriff's Office photographs were available, and some were introduced at trial. By the time defense counsel was on board in this case, the scene had changed and no recent photographs would have been helpful. Defense counsel and the Defendant agreed not to enter additional photographs in evidence because what were in evidence were sufficient. The introduction of any additional photographs would have forfeited the Defendant's rebuttal closing argument which they thought was important to maintain. Accordingly, the Defendant's claim is without merit.

Ex. J at 151-54.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly,

18

the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. Ex. J at 153. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. at 340. Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

Here, counsel's performance was not deficient. See Response at 8-10. Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the

19

case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

## C. Ground Three

As ground three, Petitioner claims counsel was ineffective for failure to call witnesses (Ryan Noble and Officer K.P. Welch) whose testimony would have supported Petitioner's defense theory. As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (as ground five). In denying this ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's fifth ground for relief, he alleges that counsel rendered ineffective assistance by failing to call witnesses. Specifically, the Defendant contends that a key witness, Ryan Noble, would have testified that . . . [he] was an employee of Radio Shack and the Defendant called him about the boxes and he told the Defendant to bring the boxes to him. The Defendant testified at the evidentiary hearing regarding this claim. The Defendant testified that he brought Mr. Noble with him to Court to testify and corroborate the Defendant's version of events. (Exhibit "D," page 24.) The Defendant testified that he expected Mr. Noble to testify but that Mr. Noble did not testify at his trial. (Exhibit "D," page 24.) The Defendant testified that he discussed calling Mr. Noble as a defense witness with Mr. Messore. (Exhibit "D," page 27.) The Defendant testified that he and post conviction counsel, James Miller, attempted to locate Mr. Noble for purposes of the evidentiary hearing but were unsuccessful. (Exhibit "D," pages 27-28.) The Defendant testified that he was not asked if he agreed with the dismissal of Mr. Noble

as a witness. (Exhibit "D," page 28.) On cross examination, the Defendant testified that Mr. Noble had been deposed and that Mr. Noble stated in his deposition that he (Mr. Noble) knew nothing about the burglary. (Exhibit "D," pages 35-36.) Finally, the Defendant testified that he only made a decision to not call the evidence technician as a witness, and he never made a decision to not call Mr. Noble as a witness. (Exhibit "D," page 38.)

Mr. Messore testified at the evidentiary hearing concerning calling Mr. Noble as a defense witness. Mr. Messore testified that Mr. Noble's sworn deposition testimony had no value to the defense.[5] (Exhibit "D," page 48.) Mr. Messore testified that Mr. Noble was not subpoenaed to appear as a defense witness and that he would not have called Mr. Noble as a defense witness because his deposition provided no support for the defense's theory. (Exhibit "D," pages 49-50.) On cross-examination, Mr. Messore testified that he had no recollection of the Defendant ever telling him that he (the Defendant) ha[d] called Mr. Noble and told Mr. Noble that he was going to pick up boxes laying on the ground for Radio Shack. (Exhibit "D," page 54.) Mr. Messore testified that if he had evidence to support the Defendant's contention that he had called Mr. Noble, that evidence would have strengthened and corroborated the theory used at trial. (Exhibit "D," page 55.) Mr. Messore testified that it was his strategy to not introduce any evidence in order to preserve first and last closing arguments at trial and that the Defendant ultimately agreed with that strategy. (Exhibit "D," page 62.)

---

[5] In his deposition, Ryan Noble stated that Petitioner Green never asked about the merchandise or the property that was there at the premises of Radio Shack.  Ex. K at 369, Deposition of Ryan Noble, taken June 23, 2000.  Based on the deposition testimony, his testimony at trial would not have been helpful to the defense.

Following the close of the State's case at trial, the Court conducted a colloquy with the Defendant regarding his rights to testify and present a defense including presenting witnesses and evidence. (Exhibit "C," pages 276-307.) During this colloquy, the Defendant was given the opportunity to tell the Court if there were any witnesses he wished [to] call or any evidence he wished to have presented on his behalf.  The Defendant discussed an evidence technician and photographs allegedly taken by this individual, however, the Defendant never mentioned Mr. Noble. (Exhibit "C," pages 284-306.)  Further, the Defendant stated under oath that he did not want to call any witnesses.  (Exhibit "C," page 306.)

Additionally, the Defendant alleges that counsel should have called Officer K.P. Welch, the evidence technician, to explain why there was no picture of forcible entry and explain from her experience, that the Defendant did not posses[s] the instrument that caused the forcible entry. During the trial, the State conceded that they did not know how the storage container was opened. The state presented evidence of a crowbar and the possibility that the Defendant backed into the storage container with a truck. The Defendant argues that he wanted to present pictures of the back of the truck to show that there was no damage to it and pictures of the damaged lock to assist in demonstrating that he did not have anything on him to open the lock. Mr. Messore testified that any possible value of calling Officer Welch as a defense witness was strategically outweighed by the strategic decision to have first and last closing arguments. (Exhibit "D," page 51.) Mr. Messore testified that he had no recollection or knowledge that Officer Welch would have testified that a crowbar could not have been used to make entry to the storage container and the resulting damage. (Exhibit "D," page 51.)

This Court specifically finds Mr. Messore's testimony was both more credible and

more persuasive than the Defendant's testimony
and allegations. <u>Laramore v. State</u>, 699 So.2d
846 (Fla. 4th DCA 1997). The deposition of
Ryan Noble was taken, and his testimony was of
no value. Defense counsel did not recall the
Defendant ever telling counsel that he had
called Mr. Noble the night of the crime.
(Exhibit "E.") Mr. Noble was not subpoenaed,
and there was no plan to call him as a
witness. Even if Mr. Noble had been present,
he would not have been called as a witness by
the defense. As to the issue of whether or not
the evidence technician should have been
called as a witness, the defense made a
strategic decision that the evidence
technician's testimony was not sufficiently
valuable to lose the second closing argument.
<u>Songer v. State</u>, 419 So.2d 1044 (Fla. 1982);
<u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d
DCA 1991) ("Tactical decisions of counsel do
not constitute ineffective assistance of
counsel")[.] Accordingly, the Defendant's
fifth ground for relief is without merit.

Ex. J at 155-58.

As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order. Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts. Thus, there are qualifying state court
decisions. This ground should be addressed applying the
deferential standard for federal court review of state court
adjudications, as required by AEDPA. Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established federal law, did not involve an unreasonable

application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. Ex. J at 157. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. at 340. Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

Here, counsel's performance was not deficient. See Response at 10-12. Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

### D. Ground Four

As ground four, Petitioner claims that he was denied due process of law when the prosecutor engaged in prosecutorial misconduct by improperly dismissing a defense witness (Ryan Noble) without Petitioner's consent. As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (as ground seven). In

24

denying this ground on the merits, the trial court stated in pertinent part:

> In the Defendant's seventh ground for relief, he alleges that the State committed prosecutorial misconduct by dismissing a defense witness without the knowledge or consent of the Defendant or counsel. Specifically, the Defendant contends that he brought key witness, Ryan Noble to court with him on the date of trial to testify on his behalf and the State sent Mr. Noble away stating that he was not scheduled to testify. The Defendant testified at the evidentiary hearing held on June 18, 2004, regarding Mr. Noble accompanying him to court on the day of his trial. (Exhibit "D," pages 23-29.) The Defendant's testimony concerning this allegation constituted double hearsay. (Exhibit "D," page 25.) Although there was discussion regarding Mr. Noble as a witness at the evidentiary hearing to testify regarding this issue, the Defendant testified that he and counsel, James Miller, were unable to locate Mr. Noble. (Exhibit "D," pages 27-28.) The Defendant submitted an affidavit from Laura Noble, Mr. Noble's mother, stating that Mr. Moran told Mr. Noble that he was not scheduled to testify and had no reason to be there since he had not received a subpoena. (Exhibit "F.") At the evidentiary hearing, Mr. Messore testified that he had not subpoenaed Mr. Noble and that he did not intend to call Mr. Noble as a defense witness. (Exhibit "D," pages 49-50.) This Court finds that the Defendant failed to establish his allegation that the State improperly dismissed Mr. Noble by stating that he was not scheduled to testify. Accordingly, this Court finds the instant claim of prosecutorial misconduct to be without merit.

Ex. J at 158-59.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly,

the claim was rejected on the merits by the state trial and
appellate courts. Thus, there are qualifying state court
decisions. This ground should be addressed applying the
deferential standard for federal court review of state court
adjudications, as required by AEDPA. Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings.

Further, for the reasons stated in the Response, this Court
finds that the claim has no merit. Response at 12-15. Clearly,
Ryan Noble was not subpoenaed by the defense, and there was no
intention of calling Mr. Noble to testify on behalf of the defense.
As noted by defense counsel, Mr. Noble's testimony would not have
been helpful to the defense. And, finally, the defense team had
made a strategic decision to not call any witnesses to preserve
their right to have first and last closing arguments, which they
thought was much more beneficial to the defense. See Tr. at 139
(Mr. Messore stated: "bringing in certain witnesses for limited
value, in my opinion, would not -- would be outweighed by my
usefulness of having two closing arguments."), 148-49, 305-06.

### E. Ground Five

As ground five, Petitioner claims he was denied due process of law when the State failed to disclose photographic evidence in violation of Brady, 373 U.S. 83.  Petitioner raised this ground in his "New Discovered Evidence Motion to Amend" during the Rule 3.850 proceedings.  In denying this ground on the merits, the trial court recognized Brady as the controlling law and stated in pertinent part:

> In the Defendant's "New Discovered Evidence Motion to Amend 3.850 Post Conviction Relief" filed on July 22, 2004, he alleges that the State committed a Brady violation. Specifically, the Defendant contends that the State willfully withheld photograph evidence from the defense based on the transcript of the evidentiary hearing held on June 18, 2004, during which it was disclosed that three photographs were missing.  At the evidentiary hearing, the State and Post Conviction Counsel, James Miller, agreed by stipulation to introduce into evidence the photographs taken by the evidence technician.  (Exhibit "D," pages 40-41.)  Mr. Miller informed the Court that his investigation with the help of the prior State Attorney were [sic] only able to locate twenty-nine of the thirty-two photographs taken by the evidence technician, but that the photographs were offered not so much for what they show, but for what they do not show.  (Exhibit "D," pages 41-42.)
>
> To establish a Brady violation, the Defendant must prove:
>
>> [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either, willfully or

> inadvertently; and [3] prejudice
> must have ensued.
>
> Way v. State, 760 So.2d 903 (Fla. 2000)
> (citations omitted).  The Defendant has failed
> to state what the three missing photographs
> depicted or establish that they were favorable
> to his defense.  Further, the Defendant has
> failed to establish that these photographs
> were willfully or inadvertently suppressed.
> Mr. Miller merely stated that he and the State
> Attorney were only able to locate twenty-nine
> of the photographs almost four years after the
> Defendant's trial.  Further, as stated above
> Mr. Messore testified that he reviewed all of
> the photographs prior to the Defendant's
> trial.[6]   Therefore, the Defendant's Brady
> claim must be denied.

Ex. J at 161-62 (footnote omitted).

   As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order.  Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts.   Thus, there are qualifying state court
decisions.   This ground should be addressed applying the
deferential standard for federal court review of state court
adjudications, as required by AEDPA.  Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based

---

[6] See EH Tr. at 333-34.

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Further, the claim is without merit.   <u>See</u> Response at 15-18.

### F. Ground Six

As ground six, Petitioner claims that he was denied due process of law when the prosecutor argued, during closing argument, that Petitioner "kicked" out the window of the patrol car. Specifically, Petitioner contends:

> However, the only other previous mention of the window being kicked out was during the prosecutor's questioning of Mr. Langdale.  The prosecutor asked Mr. Langdale, ". . . when he [Petitioner] kicked out the window and escaped from that police car . . . ." defense counsel objected, arguing that there was no testimony that the Petitioner "kicked" out any window, and the objection was sustained.  (Trial Transcripts, pg. 237).  When the prosecutor later argued during closing that the window had been kicked out, he was aware that the objection had been sustained yet he argued it nonetheless. [(Tr. at 336)].
>
> This argument by the prosecutor allowed the jury to consider facts not in evidence that were potentially inflammatory to the jury.  This is because it would tend to allow the jury to believe that the Petitioner had no respect for the authorities and further would have allowed the jury to make inferences about Petitioner's guilt due to him allegedly kicking out the window and "trying to escape the police car."

Petition at 12D.

During closing argument, the prosecutor argued:

> So he's caught in the act, and then Officer Ricks takes him and says, Well, let me

29

> take you up and put you in the back of the
> patrol vehicle. Officer Ricks places him in
> back of the patrol vehicle. Officer Ricks
> closes the door and walks around the corner,
> and within a matter of seconds the defendant
> kicks out the back window to the patrol
> window.

Tr. at 335. Defense counsel objected, stating that the prosecutor

had argued "facts not in evidence." Id. The trial judge overruled

defense counsel's objection, stating: "Each attorney is free to

make reasonable inferences from the evidence." Id. at 336. With

that, the prosecutor proceeded to continue his closing argument and

argued:

> He's there in custody, he kicks out the
> window, and runs and tries to get away. Why?
> Because he was caught red-handed in the middle
> of a burglary. And that is consciousness of
> guilt, what he did, kicking out that window
> and running.

Id.

As acknowledged by Petitioner, he raised this claim of

prosecutorial misconduct on direct appeal. The State addressed the

merits of the claim in their Answer Brief. Ex. G at 11-16.

Accordingly, this claim was rejected on the merits by the state

appellate court.[7]   Thus, there is a qualifying state court

---

[7] As previously stated, for a state court's resolution of a
claim to be an adjudication on the merits, so that the state
court's determination will be entitled to deference for purposes of
federal habeas corpus review under AEDPA, all that is required is
a rejection of the claim on the merits, not an opinion that
explains the state court's rationale for such a ruling. Wright v.
Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002),
cert. denied, 538 U.S. 906 (2003).

decision.  This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[8]  Further, the prosecutorial misconduct claim is without merit.  See Response at 18-22; Ex. G at 11-16; Tr. at 186-89 (Officer Ricks' testimony).

### G. Ground Seven

As ground seven, Petitioner claims that he was denied due process of law when a jury instruction was given that amounted to an impermissible comment on the evidence.  The particular jury instruction that Petitioner challenges is as follows:

> Now, still -- I further instruct you,
> still under the burglary category, that proof
> of unexplained possession by an accused of
> property recently stolen by means of a
> burglary may justify a conviction of burglary

_____

[8] Additionally, Petitioner, in the Rule 3.850 proceedings also raised an ineffectiveness claim concerning counsel's failure to make the necessary contemporaneous objection, move for a mistrial and request the mandatory curative instruction for the jury to disregard the alleged improper comments by the prosecutor.  The post conviction court denied the claim on the merits, and the appellate court per curiam affirmed.  See Ex. J at 147-50.

with the intent to steal that property if from
all the circumstances of the burglary and of
the possession of the stolen property, when
considered in the light -- in the light of all
the evidence in the case, convince you beyond
a reasonable doubt that the defendant
committed the burglary.

Excuse me, I think I threw a "from" in
there where it didn't belong.  Let me reread
that instruction.

**Proof of unexplained possession by an
accused [of] property recently stolen by means
of a burglary may justify a conviction of
burglary with intent to steal that property if
the circumstances of the burglary and of the
possession of the stolen property, when
considered in the light of all the evidence in
the case, convince you beyond a reasonable
doubt that the defendant committed the
burglary.**

Tr. at 374-75 (emphasis added).

As acknowledged by Petitioner, he raised this claim on direct

appeal, and the State addressed the merits of the claim.  Ex. G at

17-21.  Accordingly, this claim was rejected on the merits by the

state appellate court.[9]  Thus, there is a qualifying state court

decision.  This claim should be addressed applying the deferential

standard for federal court review of state court adjudications, as

required by AEDPA.  Upon a thorough review of the record and the

---

[9] As previously stated, for a state court's resolution of a
claim to be an adjudication on the merits, so that the state
court's determination will be entitled to deference for purposes of
federal habeas corpus review under AEDPA, all that is required is
a rejection of the claim on the merits, not an opinion that
explains the state court's rationale for such a ruling.  Wright v.
Sec'y for the Dep't of Corr., 278 F.3d at 1255.

applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Further, the claim is without merit. See Response at 22-24; Ex. G at 17-21; Tr. at 312, 375.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 14th day of July, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

33

```
sc 7/11
c:
Ladon Maurice Green
Ass't Attorney General of Record
```